May it please the court. Good morning, your honors. My name is Mitchell Bisson, and I represent the appellant, Victor Patino, in this matter. Good morning, counsel. I'd like to reserve two minutes for rebuttal. All right. Thank you. Your honors, this appeal arises out of the district court's granting of summary judgment in a case involving the warrantless entry, under a guise of an emergency, into my client's yard in subsequent killing of his pet pit bull, Bubba. The district court found in the officer's claim that the emergency exception, i.e. what was heard or thought to be gunshots, later determined to be fireworks, allowed the warrantless search and justified the entry, even though there was no evidence of a true emergency. Counsel, why isn't the fact that the officer heard what he thought were gunshots at the time and then heard moaning, in fact, or muddled sounds coming from a specific location, after having heard gunshots, why wasn't that reasonable for him to go investigate what he perceived was an emergency? Your honors, the case of Sandoval v. Las Vegas Metropolitan Police Department, which also cites to U.S. v. Ojeda, another 9th Circuit 2002 case, basically states that there needs to be individualized particular circumstances here. Well, wasn't that individualized moaning? Wasn't it particularized gunshots? Wouldn't a reasonable officer under that circumstance go over and investigate that? Wouldn't, in fact, they be negligent not to do that? Your honor, investigate, I understand. However, U.S. v. Stafford also says that there needs to be some reasonable basis, objectively, that associates the emergency with the actual location to be searched. In Sergeant Wilson's testimony, he states he hears a gunshot and believes it's at three to four different houses somewhere in that vicinity. Upon further investigation, he claims he hears some muttering or moaning, can't even specify exactly what it is. What he later on in the deposition says he's able to pinpoint it to a shed in the back of the Patino's yard. Counsel, would you agree that under the summary judgment standard of review, you have the obligation to raise a material issue of fact? That is correct, your honor. So what is the material issue of fact that you raise regarding the reasonableness of the officer's actions? I believe this case is rife with questions of fact. For example, the dispatch transmission shows that Sergeant Wilson, prior to entering the yard and shooting Bubba, there was a concurrent dispatch of a firework going off. Sergeant Wilson not only acknowledges hearing that there was a firework report, but he also acknowledges that that is likely the sound he heard. Fast forward, he enters the yard, still shoots the dog. Well, hold on. But, you know, I believe there was a report of a layperson calling that there might have been fireworks. Perhaps to a layperson, the sound of fireworks might sound like fireworks, but perhaps to an officer, and based upon his experience, he hearing the sound might have thought it was different, might have thought, in fact, that it was, in fact, a gunshot. Yes, your honor, and you have to look at the whole story in this situation, your honor, when Sergeant Wilson says he hears a gun, what he claims to be a gunshot moaning, he doesn't take any steps to the urgency of an emergency is not there. He gets in his car, drives around the block, waits for other officers. Throughout his deposition testimony, he talks about, I needed to go save somebody's life. I had to get there quickly. However, instead of jumping the immediate fences or going through the yards where he was, again, he took time to go around the block, wait for other officers, doesn't knock on a door. Again, there was this report of fireworks, no blood, no signs of a disturbance whatsoever in the Patino's front yard, back yard. In addition, the- Hold on. Let's say you're a police officer. You're going to knock on the door and say, hey, you people that have just shot off a firearm, and there is moaning that I'm hearing, I'm coming in and can you please let me in? Is that what you're saying that the officers would have to do? Your Honor, in circumstances such as this where these particular- Sergeant Wilson has testified he believes it could have been a moaning. All the other officers that were present, Officer Hemphill, Officer Bowman, all had testified that it would have been reasonable to simply knock on the door and that maybe there should be future training to slow the situations down, maybe seek a warrant first. Of course, the standard here is what an objectively reasonable officer would do. I submit that we can look at what other officers say could have been done as basis for what Sergeant Wilson should have done. If, in fact, somebody had been shot and was moaning, you would expect the officers to go and get a warrant? If there was truly somebody shot and moaning, it would be a different circumstance. But how do we know what's true and what's not true under the Circumstances Council? Your Honor, it's a question of fact for the jury to decide. Wait, it's a question of fact as to what he knew? What, a reasonable officer? You're not disputing that he said that he thought he heard a shot. You're not disputing that a layperson called in a report of at least a possible firework, maybe more, to dispatch contemporaneous with what he heard. That is, two different people heard something. Now, the layperson didn't hear the moaning or something that sounded like moaning. So you don't dispute any of that, Counsel. I dispute that what Sergeant Wilson thought. I dispute that Sergeant Wilson did not truly believe this to be an emergency. While he did go to the scene. But it doesn't matter what you believe. The issue is whether an objectively reasonable officer would have responded in the same way. So why does it matter what he truly believed? You do need to look at the officer's subjective state of mind at the time towards what a reasonable officer would do. And here we have other officers. Look at the subjective mindset of the officer to determine what an objectively reasonable officer would have done. I don't have that case site in front of me. However, I would just like to submit that this whole story of an emergency smells funny, Your Honor. Again, there were no further sounds. Why would an officer who thought he had, who calls in to dispatch and says, I think I may have heard a shot, I'm hearing a moaning, I'm going into the backyard. Why would any officer subject themselves to that kind of risk unless they actually believed that there was something going on? Because the officer was just curious as to what the people had in their backyard? Your Honor, the deposition testimony of my client, Mr. Patino, does reference prior harassment by the officers. And, Your Honor, I do believe this was a circumstance. By Officer Wilson? There was Officer Wilson and other Metro officers in general. I thought that there was, on the record, testimony about one officer having been there some ten years prior. Wasn't that the only reference to that? Yes, there was one officer prior. But there were officers in the vicinity earlier in that day, weeks prior. Mr. Patino testified about being pulled over  Do you have any way to associate Wilson with that? No. This is a giant conspiracy by Metro to harass your client? Your Honor, what I submit is that this was, after this happened, this was a created post hoc story by the officers to justify their entry and subsequent killing of Bubba. Any evidence to back that up? What do you have that you can present that made it error for Judge Boulware to issue summary judgment in this case? I just believe that there's question of fact everywhere on whether a reasonable officer had justification to enter this yard without knocking first, without establishing or being certain that the moaning came from the Patino's yard. Again, the sounds he had heard were from around the corner, other side of the block. My client has testified that there's no way you would be able to even hear moaning from that distance from his backyard to where Sergeant Wilson was. So again, Your Honor, we believe this story, which curiously got clearer as time went on and litigation progressed, Sergeant Wilson was able to more clearly have particularized facts. All right, Kelsey, did you want to take some time for rebuttal? I do, Your Honor. All right, thank you. Good morning, Your Honors. May it please the court, Craig Anderson on behalf of Sergeant Wilson and Sheriff Gillespie in the Las Vegas Metropolitan Police Department. The district court acted appropriately when it granted summary judgment on two grounds. First, that Sergeant Wilson acted reasonably, and second, that even if he hadn't, he would have been entitled to qualified immunity. The focus of the argument appears to be on the entry. There couldn't be a clearer case of the emergency exception. There is no evidence in this case of a conspiracy of these officers making up a story. The dispatch recordings are the best evidence of that because they are created contemporaneously with Sergeant Wilson's actions, and they completely back and support his story. That he heard what he perceived to be a gunshot. He then walked over, then according to his deposition testimony, he walked over to the other side of the street, was attempting to peer into backyards, but the fences were high enough that he couldn't see into the backyards. He then heard what he perceived to be moaning or some sort of muffled noise, and he updated dispatch with each of these steps as they went along. He was able to pinpoint the muffling to a brown house, which turned out to be the Patino's house. He then drove around to the front of that street and identified the residence. Sergeant Wilson had never been to the Patino's residence before. In fact, he usually didn't even work this sector. There had been an officer-involved shooting earlier in the day, so he was just handling calls for service because other officers had been taken away. So he had no prior involvement or contact with the Patinos. When he got to the front of the house, he did what a reasonable officer would. He waited for a backup to arrive. He waited for Officer Hemphill, who accompanied him into the backyard, and then Officer Baumann, who was the officer who had been there in 2008. What about the state law claims that he does raise? The state law claims are preempted by NRS 41.740, which limits the damages you can receive for the killing of a pet. Now, first of all, if the shooting of the pet was in self-defense, there can be no damages, and that's our first argument here is that the shooting of the pit bull under these circumstances was reasonable, that there would be no recovery. If, for some reason, the shooting of the pit bull was unreasonable, then their damages are limited to vet bills, which there's no evidence of any in this case. I believe Mr. Patino argues that there was a sign that indicated, I believe, beware of dog, and that that should have been a signal. In fact, they cite a case, I believe that's a Hells Angels case, that that should have been a signal for him to act accordingly, to prepare, and to not go in, literally, guns blazing. So two responses to that. First, at summary judgment, the facts do have to be taken in the light most favorable to the plaintiff, and Mr. Patino did say that there was a beware of dog sign. However, he has no evidence supporting that. We asked him to produce a picture of the sign. He said, in his answers to written discovery under oath, the police took the sign. It's no longer there. I then took his deposition two months later, and he said the sign was currently affixed to the gate as it was on the date. There were photographs taken the date of the date by the police department. There's no evidence of the sign. So I don't think he gets past the summary judgment burden that that's a fact to be taken in his favor. Let's assume that the sign was there. Does it matter? No, it doesn't matter at all, because an officer who is investigating what he perceives to be an immediate emergency for a civilian, if he were to get to a gate and see a beware of dog sign and just turn around and leave, as you stated earlier, that may be negligence. The beware of dog sign would not have prevented them from entering the backyard. They perceived there was someone potentially in need of immediate assistance. They were willing to take that risk that a dog may be present and to go back there. That would be lawful under. The Hells Angels case is completely different from this case. In Hells Angels, it was a warrant case where the police officers had a week to prepare for the execution of the warrant. They knew there were dogs in the yard. They knew that they were protect dogs. They knew they were guard dogs. The officers had time to come up at least with a plan, and what they chose to do essentially was when we enter, if the dogs attack, we're going to shoot them. And so all of the cases that find dog shoots to be unreasonable are typically warrant cases where there was some preexisting knowledge that there were going to be guard dogs or pets on the property. There's no evidence in this case that Sergeant Wilson had any idea that there would be a pit bull in the backyard when he entered. So I don't think Hells Angels. Counsel, what's your response to opposing counsel's observation that the fact that Sergeant, that Officer Wilson waited for backup militates against a finding that exigent circumstances existed? Absolutely not. I think that's a sign of the reasonableness and the objective reasonableness that Sergeant Wilson conducted himself with. Sergeant Wilson knew that he was encountering a potentially dangerous situation, potentially someone with a firearm. So what he chose to do was to increase his odds of a successful entry by having backup, having people in place that if someone were to flee out the other side, jump over a fence, that they would be able to contain them. The entire setup was about five minutes, so he did wait about five minutes for his backup to arrive and to do that. But I think that's a sign of an officer who is weighing the consequences of his actions and making the correct determinations that it would be the safest entry possible and the best for all people involved. So I don't think that that mitigates at all against the emergency that he perceived. I just don't see any evidence in this case that he was going into that backyard for any reason but to make sure everybody was okay. When they say that they were there to harass Mr. Patino, they never even handcuffed him. They didn't arrest him. They didn't take any adverse action against him, even though admittedly by Mr. Patino it was a hostile situation. Obviously his pet had been shot, that he was aggressive, that the officers were confronted with some hostility. They didn't take any action against anybody. There were no against Mr. Patino. I think his argument was also that he had been harassed previously by the police department, previously stopped, I think is what he indicated. As you are aware, Section 1983 claims are individual claims. We found no evidence of that. We searched for that and didn't find any evidence of him ever being arrested. The argument at his deposition was that his brothers had been harassed. There was an armed burglary that they were involved with, but that was in 2008, five years before the incident. He did say that police officers were regularly at their residence. We found no evidence of that. We have no evidence of Sergeant Wilson, which is the most important person in this case. Ever having been to this street before, he had no knowledge of these people. And as you say, with the conspiracy to think that he was there on a call that a boyfriend was harassing a girlfriend, that he took that opportunity to go harass this family on a street over, it gets a little far-fetched that there's any type of animus or conspiracy to harass the Patinos, especially in light of the fact they didn't even arrest anybody or take any adverse criminal action against anyone on the property. Do you have any questions about the shooting of the Pitbull? It appears not. Okay. The only thing that I would leave with then is that even if there's a finding that any of this was unreasonable, the appellants have not put forth any clearly established law that would defeat the qualified immunity argument as well. They have not cited one emergency exception case that would have put Sergeant Patino on notice that entering the backyard would be unconstitutional, and they haven't provided any dog shoot cases that would indicate that under these circumstances, the shooting would violate the Fourth Amendment. So I appreciate your time. If you don't have any other further questions, I'll sit down. All right. Thank you, counsel. Thank you, Your Honors. Thank you, Your Honors. Your Honors, opposing counsel has mentioned that there was about a five-minute set-up time before they entered the yard, and that's the exact situation I'm talking about. They're claiming there's a life-or-death situation. Somebody's possibly bleeding out, and they need to save their life, get there quickly. However, they admittedly wait at least five minutes. In this five minutes, there's no further moaning, no other gunshots. Sergeant Wilson doesn't look for other witnesses in the area or ask if anybody else heard any sounds, doesn't knock on any doors. He simply waits, and then they go guns blazing into the yard, and Bubba comes around the corner. As far as clearly established law, the Hell's Angel case actually stands for the proposition that the specific conduct doesn't have to be found as unconstitutional so long as the unlawfulness is apparent in light of preexisting law. The Supreme Court cases of Brigham City v. Stewart and Michigan v. Fisher do reference the emergency exception, and in those cases, it basically stands for the proposition that there needs to be an objectively reasonable basis justifying the entry. Your Honors, what we know before the entry is there's a firecracker going off Sergeant Wilson thought was a gunshot. There's no urgent actions taken. He takes his time, waits at least five minutes for backup. No blood, signs of a disturbance. Is able to look into the yard. There's a helicopter flying over that sees nothing except for children's toys in the yard. Fast forward to the aftermath. While Mr. Patino may not have been handcuffed, I believe there were approximately seven family members of Mr. Patino's that were placed in handcuffs when they exited. They were placed in the front of the yard. And, of course, no crime was committed by any of them. However, they were all cuffed, put in the front yard for questioning why officers were in their yard without permission and had shot their dog. All right. Thank you, counsel. Thank you, Your Honors. You've exceeded your time. Thank you to both counsels. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bybee, Mendoza